**STATE**

v.

**Lewis E. ELLIOTT.**

**No. 99–164–C.A.**

Supreme Court of Rhode Island.

Jan. 10, 2001.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This appeal from a criminal conviction challenges (1) the admission of certain uncharged sexual misconduct evidence as improper hearsay, and (2) the validity of the prosecutor's closing argument that referred to this evidence.

The defendant, Lewis E. Elliott, appeals from his conviction of two counts of second-degree child molestation in violation of G.L.1956 § 11–37–8.3 for having sexually assaulted his stepdaughter. Upon the conclusion of a jury trial, he was convicted and sentenced to thirty years: fifteen years to serve and fifteen years suspended, with probation. On appeal, defendant raises two issues: the prosecution's introduction of certain uncharged sexual misconduct evidence and its exploitation of this evidence during closing argument. The evidence in question concerned an uncharged allegation of sexual molestation against defendant involving a different child than this stepdaughter. We shall refer to this other child fictitiously as "Tammy." Following a prebriefing conference, this Court directed the parties to show cause why the appeal should not be summarily decided. Because neither party has done so, we shall proceed to decide the appeal at this time.

During the trial, the state filed supplemental discovery responses, including cop-

ies of records obtained from the Department of Children, Youth, and Families (DCYF). The state wanted to call Tammy as a witness to testify that, at some point between April 1990 and April 1991, when Tammy was approximately eleven years old, defendant drove her from Rhode Island to Florida and sexually molested her during that trip.

After long arguments and discussion with counsel, the trial justice decided that the state's delay in producing this discovery material to the defense had prejudiced defendant, and thus he ruled it was inadmissible. He also ruled that the state could not use Tammy's testimony at trial.

However, during cross-examination of a prosecution witness (defendant's wife, Mrs. Elliott), defendant's lawyer asked her the following questions:

"Q. But isn't it true in the year 1993, well before this period of time, a [DCYF] child protective investigator came to your home in Sanford and interviewed [your daughter]; isn't that true?

"A. I don't remember that. Yes. Yes, it is.

"Q. Oh, you remember it now?

"A. Oh, yeah. I remember what it was about, yes, I do.

"Q. So someone interviewed [your daughter] in your home, interviewed [your daughter] in your home?

"A. Yes.

"Q. About—in '93?

"A. I think it was closer to '91 or '92.

"Q. Okay. '91 or '92. As to whether Mr. Elliott had ever touched her, isn't that correct?

"A. Yes, but it was in regards to something else.

"Q. It was in regards to whether—. It was in regards to Mr. Elliott, was it not?

"A. That's right, yes.

"Q. And isn't it true that she told that investigator, 'No, he never touched me'?

"A. Yes."

Then, on redirect examination, the state asked the following:

"Q. Okay. Ms. Elliott, on cross-examination Mr. Oddo asked you about an individual or individuals from child protective services coming to your residence in 1991 and interviewing your children.

"A. That's correct.

"Mr. Oddo: Objection. This is beyond the scope of my cross-examination.

"The Court: Overruled. The witness may answer.

"A. That's correct.

"Q. Do you know why they came to your residence?

"A. Allegations of sexual molestation on [Tammy].

"Q. By whom?

"Mr. Oddo: Objection. Move to strike.

"The Court: So far, no prejudice. So far, no prejudice. And, take the jury out. I'll allow that answer to stand."

At that point, the trial justice heard arguments by counsel as to "[h]ow far did the door get open?" After extended argument, the trial justice decided that, given defendant's cross-examination of his wife on her 1991 or 1992 encounter with a DCYF investigator in connection with a probe of Tammy's sexual-molestation complaint against defendant, testimony on redirect examination about the existence of that complaint no longer would be prejudicial. The defendant's cross-examination of his wife had raised the potentially misleading implication that, on another occasion, the stepdaughter had falsely accused the defendant of sexual molestation—only to deny the charge when DCYF investigated it. For this reason, the trial justice was entitled to conclude that the defense had "opened the door" to this subject on redirect examination by inquiring into this other investigation during its cross-examination of defendant's wife. Furthermore, the trial justice instructed the jury on their limited ability to use such testimony in accordance with Rule 404(b) of the Rhode

Island Rules of Evidence. Specifically, he cautioned them that if they accepted Mrs. Elliott's testimony about why an individual from DCYF's child-protective services unit came to her residence in 1991, they could consider it as evidence of:

"a pattern, a design, a scheme, an intent, a plan, a mode of operation, if you please, of the defendant. You are not permitted to conclude that the defendant committed the offense, with which he is charged here, just because you believe he might have engaged in some other kind of misconduct with some other person of the nature that this evidence might suggest. It's for a very limited purpose only. It's offered to you only to prove that the defendant may have had a certain plan, scheme, mode of operation, intention or, with respect to the defendant, to the complaining witness in this case. All right. You may proceed."

Thereafter, the state wanted to inquire further about defendant's relationship with Tammy but the trial justice would not allow any more questions about her, commenting, "[t]hat's as far as you got the door pried open."

The defendant now argues that the court's admission of this testimony was clearly wrong. For support, he relies upon *State v. Mallett*, 600 A.2d 273, 277 (R.I.1991), in which this Court considered a similar issue and ruled that such testimony was inadmissible hearsay despite earlier questions by the defendant on the subject. In *Mallett*, a murder trial, counsel for the defendant asked a police detective during cross-examination whether he had sent wallpaper and smear samples to the FBI lab for analysis, to which the detective answered affirmatively. *Id.* On redirect examination, the court allowed the state to ask the detective to confirm that the test results indicated the blood was human. *Id.* On appeal the defendant argued that the trial justice erred in admitting hearsay into evidence, while the state argued that the defendant had "opened the door" by asking whether the articles had been test-

ed. *Id.* We agreed with the defendant and ruled that no hearsay exception covered this testimony and, therefore, the court should not have admitted it. *Id.*

In this case, unlike *Mallett*, defendant did not raise a hearsay objection when the state asked Mrs. Elliott why a DCYF investigator had interviewed her daughter in the first place. Instead, defendant challenged the questions on redirect examination as beyond the scope of the cross-examination, but the court ruled that the state's questions were not beyond the scope of cross-examination and were therefore admissible. The permissible scope of redirect examination, like the scope of cross-examination, rests in the sound discretion of the trial judge. *State v. Studley*, 671 A.2d 1230, 1231 (R.I.1996) (per curiam). Given defendant's earlier questions during cross-examination about the DCYF visit and the potentially misleading implications of that questioning, we hold that the trial justice did not abuse his discretion in allowing the state's questions to clarify what that encounter concerned. In any event defendant failed to preserve any hearsay objection by neglecting to raise it at trial.

In *Studley*, the state accused the defendant of possessing marijuana with intent to deliver. 671 A.2d at 1230–31. During a search for marijuana and drug paraphernalia, the police seized weapons, although the defendant successfully moved in limine to exclude the weapons evidence at trial. *Id.* at 1231. However, defense counsel specifically asked on cross-examination whether a search for weapons had been conducted. *Id.* On redirect examination the state was permitted to ask whether any weapons had been found. *Id.* On appeal, this Court ruled that it was within the sound discretion of the trial justice to determine the permissible scope of redirect examination in accordance with Rule 611 of the Rhode Island Rules of Evidence. *Id.* Similarly here, after the defendant had failed to raise a hearsay or any other objection to the questioning about the

DCYF visits (except that it exceeded the scope of defendant's cross-examination), the trial justice did not abuse his discretion in allowing the state to question Mrs. Elliott on redirect examination about her knowledge of why DCYF was in Florida asking these questions.

■ The defendant also argues that the "error was compounded" by the manner in which the state utilized this evidence during closing argument. Our review of the record, however, leads us to conclude that no such compounding of error occurred. The prosecutor's closing argument on this point fell well within the parameters of the trial justice's earlier limiting instruction that the testimony could be used to show "a pattern, a design, a scheme, an intent, a plan, a mode of operation, if you please, of the defendant." *See also* Rule 404(b). Furthermore, the trial justice gave a second instruction after the closing arguments to ensure that the jury would properly cabin their use of this evidence to the purposes allowed by the rule.

■ In any event, admission of this evidence would have constituted harmless error even if, arguendo, the trial justice had erred in his ruling on this matter. The victim testified in detail about the defendant's molestation of her and she clearly explained her reasons for keeping it a secret from her mother. Other testimony also corroborated the victim's story, establishing the defendant's lewd disposition toward her. Thus, the brief reference to DCYF's investigation of the defendant's alleged sexual molestation of Tammy and the state's closing argument that incorporated this reference did not, in our opinion, substantially affect the quantum of evidence establishing the defendant's guilt.

Thus, we deny the defendant's appeal and affirm the judgment of conviction.